UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DUKE ENERGY CORPORATION,
a Delaware corporation,

     Plaintiff,

v.                             CASE NO.:

GREENPOINTE HOLDINGS, LLC, a Florida
limited liability company; GREENPOINTE
COMMUNITIES, LLC,
a Florida limited liability company;
GREENPOINTE HOMES, LLC, a Florida
limited liability company;
SH VENTURE I, LLC, a Florida limited
liability company; and RH VENTURE II,
LLC, a Florida limited liability company,

     Defendants.

_____/

## COMPLAINT

Plaintiff DUKE ENERGY CORPORATION ("**Duke**") sues Defendants GREENPOINTE

HOLDINGS, LLC, GREENPOINTE COMMUNITIES, LLC, GREENPOINTE HOMES, LLC,

SH VENTURE I, LLC, and RH VENTURE II, LLC (collectively, the "**Defendants**" and/or the

"**GreenPointe Entities**"), for equitable and declaratory relief, and states as follows:

**I.**    **Introduction**

1.    As guarantor of certain obligations of a now-defunct developer called Crescent

Resources, LLC ("**Crescent**"), Duke has been left to pick up the pieces after Crescent filed for

bankruptcy during the midst of the recession after the burst of the real estate bubble.

2.    A group of former executives of Crescent's Florida division, LandMar Group,

LLC ("**LandMar**"), led by Edward E. Burr, formed the GreenPointe Entities seeking to profit

from the failure of Crescent and its subsidiaries to meet obligations to others, and by specifically taking advantage of their insider knowledge of the true value of certain assets in the Crescent bankruptcy cases.

3.      The GreenPointe Entities purchased valuable assets from the Crescent entities during the bankruptcy cases for pennies on the dollar and have subsequently attempted to evade costly and undesirable obligations originally associated with those assets.  These actions left Duke and others to deal with the consequences of the Crescent entities' failure to perform obligations while the GreenPointe Entities and the former Crescent executives who formed them received unwarranted profits.

4.      The GreenPointe Entities exploited Duke's decision to honor its guarantor obligations related to Crescent (including its subsidiaries) without contest by encouraging third parties to make claims against Duke.

5.      The GreenPointe Entities have withheld significant facts from Duke regarding obligations related to bonding, and even made demands against Duke on behalf of others.

6.      These actions all furthered GreenPointe's ability to secure significant benefits and advantages for the GreenPointe Entities at the expense of Duke.

## II.      Parties, Jurisdiction, and Venue

7.      Plaintiff Duke is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

8.      Defendant GreenPointe Holdings, LLC ("**GreenPointe Holdings**") is a Florida limited liability company with its principal place of business in Jacksonville, Florida.  The managing member of GreenPointe Holdings is Edward E. Burr, an individual who resides in Florida.

2

9.     Defendant GreenPointe Communities, LLC ("**GreenPointe Communities**") is a Florida limited liability company with its principal place of business in Jacksonville, Florida. The managing member of GreenPointe Communities is GreenPointe Holdings.

10.     Defendant GreenPointe Homes, LLC ("**GreenPointe Homes**") is a Florida limited liability company with its principal place of business in Jacksonville, Florida. The managing member of GreenPointe Homes is GreenPointe Holdings.

11.     Defendant SH Venture I, LLC ("**SH Venture**") is a Florida limited liability company.  The sole member of SH Venture is SH Venture Group, LLC, whose managing member is GreenPointe Communities.

12.     Defendant RH Venture II, LLC ("**RH Venture**") is a Florida limited liability company, the sole member of which is River Hall Investment Group, LLC, a Delaware limited liability company.  The managing member of River Hall Investment Group is GreenPointe Communities.

13.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  There is diversity of citizenship between the parties, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14.     Venue for this civil action is proper in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. § 1391(a) and (b).  The Defendants are each located in and subject to personal jurisdiction in this District.  A substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District, and the Tampa Division encompasses the county or counties with the greatest nexus with the cause.

III.     **General Background Facts**

15.     In and around the early- to mid-2000s, Crescent entered into multiple development agreements and development orders with various units of local government, including the City of Brooksville, Florida, Lee County, Florida, the City of Lakeland, Florida, and others.

16.     Pursuant to those agreements and development orders, Crescent secured the right to develop luxury master-planned communities in exchange for commitments to complete and maintain certain related infrastructure improvements necessary to support those communities.

17.     Some of those development agreements and development orders required that Crescent provide assurances, in the form of surety bonds (collectively, the "**Surety Bonds**"), that those related infrastructure improvements would be constructed and maintained in accordance with the development agreements and development orders.

18.     As a condition of issuing some of the Surety Bonds, two of the sureties, Federal Insurance Company ("**Chubb**") and Travelers Casualty and Surety of America ("**Travelers**") (together, the "**Sureties**"), sought guarantees to protect themselves in the event of a default by Crescent.

19.     To that end, Duke executed for the benefit of Crescent a December 27, 2006 General Contract of Indemnity with Travelers (the "**Travelers Indemnity Agreement**") and a February 2, 2007 General Agreement of Indemnity with Chubb (the "**Chubb Indemnity Agreement**").[1]  True and accurate copies of the Travelers Indemnity Agreement and the Chubb

---

[1] Duke agreed to guaranty the Bonds based on the prior corporate relationship between Duke and Crescent.  Until September 7, 2006, Crescent was a wholly-owned subsidiary of Duke.  On September 7, 2006, Duke sold 51% of its interest in Crescent, but as part of the agreement, Duke agreed to provide credit guaranties for existing projects, such as those at issue in this lawsuit.

Indemnity Agreement are attached hereto as **Exhibit A** and **Exhibit B**, respectively, and incorporated herein by reference.

20.    Under the Travelers Indemnity Agreement, in the event of a default on a Surety Bond, Duke guaranteed Crescent's obligations under the applicable Surety Bond, to, among other things:

    a.  pay the bond premiums as they come due until Travelers has been provided competent legal evidence that the Surety Bonds have been duly discharged, and

    b.  indemnify and exonerate Travelers from and against any and all loss, cost, and expense as a result of furnishing the Surety Bonds.

21.    Under the Chubb Indemnity Agreement, in the event of a default on a Surety Bond, Duke guaranteed Crescent's obligations under the applicable Surety Bond, to, among other things:

    a.  pay the bond premiums as they come due until Chubb has been provided satisfactory evidence, in its sole discretion, that it has been fully released of liability under such Surety Bond, and

    b.  indemnify, exonerate, and save Chubb harmless from and against every claim, loss, damage, demand, liability, cost, charge, bond premium, suit, judgment, attorneys' fees, and reasonable expense that Chubb incurred in consequence of having obligations in connection with any of the Surety Bonds.

22.    Pursuant to the Travelers and Chubb Indemnity Agreements, Duke guaranteed Surety Bonds issued to the following subsidiaries of Crescent:

5

    a.   Non-party Hampton Ridge Developers, LLC ("**Hampton Ridge**"), developer of a Crescent community in Brooksville, Hernando County, Florida, referred to as Southern Hills Plantation ("**Southern Hills**");

    b.   Non-party Bridgewater Lakeland Developers, LLC ("**Bridgewater Developers**"), developer of a Crescent community in Lakeland, Polk County, Florida, referred to as Bridgewater ("**Bridgewater**");

    c.   Non-party Hawk's Haven Developers, LLC ("**Hawk's Haven**"), developer of a Crescent community in Alva, Lee County, Florida, referred to as River Hall ("**River Hall**"); and

    d.   Non-party Hawk's Haven Golf Course Community Developers, LLC ("**Hawk's Haven Golf**"), also a developer of River Hall.

(collectively, Hampton Ridge, Bridgewater Developers, Hawk's Haven, and Hawk's Haven Golf are referred to herein as the "**Crescent Subsidiaries**," and collectively, Southern Hills, Bridgewater, and River Hall are referred to herein as the "**Communities**").

23.    On June 10, 2009, Crescent, the Crescent Subsidiaries, and more than a hundred other related entities filed petitions for relief in bankruptcy pursuant to Chapter 11 in jointly administered cases styled *In re Crescent Resources, LLC*, *et al, Debtors*, Case No. 09-11507 (CAG) in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "**Bankruptcy Cases**").

24.    After the Bankruptcy Cases were initiated, the founder and former CEO of LandMar, Edward E. Burr, and a number of former Crescent and LandMar executives, including Graydon (Grady) Miars and Roger Postlethwaite (collectively, the "**Crescent Executives**") resigned and founded the GreenPointe Entities.

25.     On information and belief, the resignation of the Crescent Executives was timed such that Grady Miars would remain on as an officer of the Crescent Subsidiaries in the Bankruptcy Cases long enough to enable the GreenPointe Entities to position themselves to acquire the assets of the Crescent Subsidiaries on the most favorable terms possible.

26.     Acting through the GreenPointe Entities, the Crescent Executives exploited their insider knowledge of the various development agreements, development orders, entitlements, contractual obligations, and surety bond obligations of the Crescent Subsidiaries, and selectively purchased certain assets of the Crescent Subsidiaries.

27.     The GreenPointe Entities knew that the Sureties had issued certain performance and maintenance Surety Bonds to secure certain development obligations of the Crescent Subsidiaries with respect to each of the Communities.

28.     The Crescent Executives also were aware of the existence of the Chubb Indemnity Agreement and the Travelers Indemnity Agreement, and that the Bankruptcy Cases would trigger Duke to act in a manner consistent with those agreements.

29.     As more specifically set forth below, the GreenPointe Entities leveraged their insider knowledge to purchase the selected assets of the Crescent Subsidiaries for pennies on the dollar, and in the course of those purchases, the relevant GreenPointe Entities:

    a.  Refused to perform or accept certain of the undesirable or costly obligations of the Crescent Subsidiaries that were covered by the relevant Surety Bonds;

        i.  For example, with respect to Southern Hills, when the City of Brooksville objected in the Bankruptcy Cases, the relevant GreenPointe Entities[2] secured withdrawal of the objection and obtained necessary approval of

_____

[2] On information and belief, the relevant GreenPointe Entities with respect to Southern Hills include GreenPointe Holdings, GreenPointe Communities, GreenPointe Homes, and SH Venture.  Additional entities that are known to the defendants but unknown to Duke may have been involved as well.

the conveyance by facilitating and assisting the City of Brooksville in making a claim against the Surety Bonds in exchange for the City of Brooksville's agreement to modify the underlying development agreement and eliminate an obligation by GreenPointe to construct those improvements.

b. Refused to perform obligations within the period of time specified by the Southern Hills development agreements and/or a contract with Candlelight Mini Storage, Inc. ("**Candlelight**") that the relevant GreenPointe Entities assumed; and

i. For example, with respect to Southern Hills, the relevant GreenPointe Entities[3] secured withdrawal of an objection by the City of Brooksville (and, on information and belief, headed off a similar objection by Candlelight) in the Bankruptcy Cases and secured necessary approval of the conveyance by facilitating and assisting the City of Brooksville and Candlelight in making claims against the Surety Bonds in exchange for an agreement to modify the underlying development agreement and contract to extend the deadlines for the relevant GreenPointe Entities to construct the same improvements.

c. Avoided the requirement by Lee County that as the new developer of River Hall the relevant GreenPointe Entities[4] must obtain security, and accepted the benefit of Duke's payment of the River Hall Bonds in lieu of obtaining replacement security. To this end, the relevant GreenPointe Entities failed or refused to supply

---

[3] See note 2, supra.

[4] On information and belief, the relevant GreenPointe Entities with respect to River Hall include GreenPointe Holdings, GreenPointe Communities, GreenPointe Homes, and RH Venture. Additional entities that are known to the defendants but unknown to Duke may have been involved as well.

to Lee County information that would entitle Duke to cease making premium payments under the River Hall Bonds (presumably because then Lee County would require the relevant GreenPointe Entities to provide security), and brazenly attempted to extract payment on those bonds from Duke for the benefit of the relevant GreenPointe Entities even though the GreenPointe Entities had no authority or standing to make such a demand, had no entitlement to receive such payments, and Lee County had not declared a default.  By avoiding the statutory requirement to post security, the relevant GreenPointe Entities have reaped the benefit of developing River Hall without of the costs associated with providing the necessary security.

30.   As a consequence of these and other acts and omissions by the GreenPointe Entities:

a.   Duke has paid and continues to be obligated to pay for the benefit of the GreenPointe Entities the annual or semi-annual premiums for Surety Bonds securing obligations that once belonged to the Crescent Subsidiaries but now are the obligations of the relevant GreenPointe Entities; and

b.   Duke has complied with its contractual obligation to indemnify and defend the Sureties with respect to claims and lawsuits related to the Surety Bonds issued to secure Hampton Ridge's obligations to the City of Brooksville and to Candlelight.

31.   The payments made by Duke in the form of bond premium payments and payments made to indemnify and defend the Sureties have inured to the benefit of the GreenPointe Entities and should have been paid by the GreenPointe Entities.

32.     Pursuant to the Indemnity Agreements, Duke's obligation continues until the Sureties are, in their sole discretion, satisfied that they have been released from liability under the Surety Bonds at issue.

## IV.    The Communities

### A.     Southern Hills

33.     As developer of Southern Hills, Hampton Ridge entered into a City of Brooksville, Florida Development Agreement for Hampton Ridge Project (the "**Southern Hills Original Development Agreement**" and as subsequently amended by the "**Southern Hills Development Agreement**") with the City of Brooksville on May 28, 2003, that obligated Hampton Ridge to construct or maintain certain infrastructure improvements.  The Southern Hills Original Development Agreement was subsequently amended pursuant to a First Amendment to City of Brooksville, Florida Development Agreement for Hampton Ridge Project dated October 18, 2004 (the "**First Amendment**"), a Second Amendment to City of Brooksville, Florida Development Agreement for Hampton Ridge Project dated November 29, 2004 (the "**Second Amendment**"), and a Third Amendment to City of Brooksville, Florida Development Agreement for Hampton Ridge Project dated May 5, 2008 (the "**Third Amendment**").  True and accurate copies of the Southern Hills Original Development Agreement, the First Amendment, the Second Amendment, and the Third Amendment are attached hereto as **Composite Exhibit C**.

34.     As a condition of development approval for Southern Hills, the City of Brooksville required Hampton Ridge to obtain bonds, issued by Travelers and Chubb, relating to Southern Hills for the benefit of the City (collectively, the "**City of Brooksville Surety Bonds**").

35.     As developer of Southern Hills, Hampton Ridge also entered into a Vacant Land Contract (the "**Candlelight Contract**") with Candlelight pursuant to which Hampton Ridge sold Candlelight a parcel of property consisting of approximately 2.86 acres located in Southern Hills in Brooksville, Florida (the "**Candlelight Property**").

36.     The Candlelight Property was land-locked with no access road when Hampton Ridge sold it to Candlelight.  By virtue of the Candlelight Contract and various subsequent related agreements and amendments, Hampton Ridge obligated itself to Candlelight to construct or bond the required offsite infrastructure improvements for road, water, sewer, and irrigation supply to the Candlelight Property by a specific date.

37.     Hampton Ridge thereafter obtained from Chubb a bond to secure its obligations to Candlelight ("**Candlelight Bond**").

38.     Hampton Ridge failed to timely construct the required infrastructure improvements and was subsequently in default of its obligations to the City of Brooksville and Candlelight at the time of the Bankruptcy Cases.

39.     On January 8, 2010, during the pendency of the Bankruptcy Cases and with the approval of the bankruptcy court presiding over the Bankruptcy Cases (the "**Bankruptcy Court**"), Hampton Ridge, as a debtor-in-possession, entered into a contract to sell the entire Southern Hills development, including real property, the golf course, the sports and fitness center, unsold lots, and related personal property, leases, service agreements, sales contracts, and permits and approvals, to GreenPointe Communities, for one million one hundred thousand dollars ($1,100,000.00) (the "**Southern Hills Sale Contract**").  A true and accurate copy of the Southern Hills Sale Contract is attached hereto as **Exhibit D** and incorporated herein by reference.

40.     The Southern Hills Sale Contract was executed by Edward Burr, the founder of LandMar, on behalf of GreenPointe Communities and by current president of GreenPointe Communities Grady Miars in his capacity as Vice President of LandMar.

41.     The Southern Hills Sale Contact specifically included a transfer of the Southern Hills Development Agreement with the City of Brooksville and the Candlelight Contract.

42.     In the Southern Hills Sale Contract, Hampton Ridge disclosed the City of Brooksville Surety Bonds and the Candlelight Bonds to GreenPointe Communities but denounced any ongoing duty on behalf of Hampton Ridge to renew, maintain, or replace any of the City of Brooksville Surety Bonds or the Candlelight Bond.

43.     Section 3(b) of the Southern Hills Contract expressly provided a procedure for GreenPointe Communities to identify and assume obligations in connection with the purchase of the Southern Hills Project:

> (b) Assumption Procedure.  Within fifteen (15) days after the Effective Date, Buyer shall review each of the Service Agreements, Personal Property Leases, the Permits and Approvals, CDD Developer Agreements, Sales Contracts, and Security Obligations, and obligations associated therewith and arising thereunder, and notify Seller in writing (the "Assumption Notice") of any of the foregoing that Buyer wishes to assume as of Closing (the "Assumed Obligations") . . . At Closing, Seller shall assume all of the Assumed Obligations, and then Seller shall assign to Buyer, and *Buyer shall assume the Assumed Obligations* pursuant to one or more assignment and assumption instruments as more specifically contemplated by this Agreement . . . Additionally, at Closing, Seller shall assume, and then Seller shall assign to Buyer all of the Permits and Approvals pursuant to an assignment and assumption agreement contemplated by this Agreement.

(Ex. E at 6 (emphasis added))

44.     On January 25, 2010, GreenPointe Communities sent a letter to Hampton Ridge notifying it that GreenPointe Communities would assume at closing, among other things, the Southern Hills Development Agreement (the "**Southern Hills Assumption Notice"**).

45.     Hampton Ridge subsequently filed a Notice of Limited-Notice De Minimis Asset Conveyance Pursuant to Asset Conveyance Procedure in the Bankruptcy Cases that described in general terms that Hampton Ridge would convey certain assets to GreenPointe Communities but did not attach the Southern Hills Sale Contract.

46.     On March 10, 2010, the City of Brooksville objected to the Southern Hills Sale Contract in the Bankruptcy Cases because Hampton Ridge was in default of its obligations to the City of Brooksville as the developer of Southern Hills, and no assurance had been given to the City of Brooksville that Hampton Ridge or GreenPointe Communities would cure those defaults and complete all of the infrastructure improvements for Southern Hills.

47.     On May 12, 2010, the City of Brooksville entered into a Joint Stipulation Resolving the City of Brooksville's Objection (the "**Stipulation**").

48.     Pursuant to the Stipulation, the City of Brooksville agreed to withdraw its objection based on representations from Hampton Ridge and GreenPointe Communities that such withdrawal was necessary to permit GreenPointe Communities to discuss and negotiate with the City of Brooksville potential modifications of the Southern Hills Development Agreement.

49.     On behalf of itself and the other relevant GreenPointe Entities, GreenPointe Communities negotiated an arrangement with the City of Brooksville pursuant to which GreenPointe Communities would not construct all of the infrastructure improvements as required by the Southern Hills Development Agreement and that the City of Brooksville would agree to this and make itself whole by agreeing to the conveyance to GreenPointe Communities and seek leave in the Bankruptcy Cases to make a demand on the City of Brooksville Surety Bonds.

50.    On information and belief, GreenPointe Communities pledged to assist the City of Brooksville in its demand against the Surety Bonds.

51.    On September 8, 2010, the City of Brooksville obtained relief from the automatic stay in the Bankruptcy Cases, served Hampton Ridge with a notice of default, and made demands to the Sureties on the City of Brooksville Surety Bonds.

52.    Thereafter, on October 18, 2010, the City of Brooksville filed suit against the Sureties in the Fifth Judicial Circuit in and for Hernando County, Florida, seeking damages in excess of twenty million dollars ($20,000,000.00) (the "**City of Brooksville Action**").

53.    The City of Brooksville Action was subsequently removed to the Tampa Division of the Middle District of Florida, Case No. 8-10-cv02326-JDW-EAJ.  A copy of the City of Brooksville's Complaint for Declaratory Judgment, Breach of Contract, and to Foreclose Bonds and Demand for Jury Trial is attached hereto as **Exhibit E**.

54.    On December 17, 2010, Duke moved to intervene in the City of Brooksville Action to protect its interests under the Travelers Indemnity Agreement and the Chubb Indemnity Agreement.

55.    On June 7, 2011, the City of Brooksville, the Sureties, and Duke entered into a Settlement Agreement by which Duke agreed to pay the City a sum of three million five hundred thousand dollars ($3,500,000.00) in exchange for a release of the obligations under the City of Brooksville Surety Bonds and dismissal of the City of Brooksville Action ("**Southern Hills Settlement**").

56.    In addition to indemnifying the Sureties for the Southern Hills Settlement, Duke was obligated to provide the Sureties with a defense in the City of Brooksville Action and in fact paid the entire cost of the Sureties' defense.

57.     At no point did GreenPointe Communities disclose to Duke that it had encouraged the City to withdraw its objection in the Bankruptcy Cases and pursue the City of Brooksville Surety Bonds in lieu of requiring GreenPointe Communities to construct the entirety of the infrastructure improvements as originally required of Hampton Ridge as a condition of the City of Brooksville's approval of the transaction.

58.     The relevant GreenPointe Entities[5] benefited from Duke's payment of the Southern Hills Settlement.

59.     On or about November 4, 2011, after the Southern Hills Settlement had been finalized, Candlelight filed suit against Chubb in the Fifth Judicial Circuit in and for Hernando County, Florida, seeking damages in excess of six hundred thousand dollars ($600,000.000) (the "**Candlelight Action**").  A copy of Candlelight's Complaint for Breach of Surety Bond Contract and Demand for Jury Trial is attached hereto as **<u>Exhibit F</u>**.

60.     Prior to initiating the Candlelight Action, the relevant GreenPointe Entities encouraged the principals of Candlelight to make a demand on the Candlelight Bond to Duke directly, and that demand was in fact made in a letter dated one day after the Southern Hills Sale Contract was executed.

61.     The relevant GreenPointe Entities encouraged the principals of Candlelight to make demand to Duke directly, in lieu of objecting to the Southern Hills Sale Contract in the Bankruptcy Cases and pressing forward on a proof of claim, which would have risked heightened scrutiny of the Southern Hills Sale Contract in the Bankruptcy Cases.

62.     After Chubb took the deposition of Grady Miars, who testified as GreenPointe Communities' corporate representative that GreenPointe did not intend to construct the necessary improvements that would benefit the Candlelight Parcel for many years, on or about January 16,

---

[5] See note 2, supra.

2013, Candlelight and Chubb entered into a Mediated Settlement Agreement and Release ("**Candlelight Settlement**").

63.     Pursuant to its obligation under the Chubb Indemnity Agreement and in connection with the Candlelight Settlement, Duke fully indemnified Chubb for the amount of the Candlelight Settlement and Chubb's defense costs.

64.     The relevant GreenPointe Entities[6] benefited from Duke's payment of the Candlelight Settlement, and also benefited from Candlelight's willingness to pursue payment on the Candlelight Bond in lieu of objecting to the Southern Hills Sale Contract.

     **B.**     **River Hall**

65.     As developers of River Hall, Hawk's Haven and Hawk's Haven Golf obligated themselves to Lee County, Florida ("**Lee County**"), to construct or maintain certain infrastructure improvements within River Hall.

66.     Pursuant to requirements of Lee County, Hawks Haven and Hawks Haven Golf obtained development orders for River Hall ("**River Hall Development Orders**").

67.     Lee County required Hawk's Haven and Hawk's Haven Golf to cause surety bonds to be issued by Travelers to secure certain development obligations owed to the County pursuant to the River Hall Development Orders.

68.     As developer of River Hall, Hawk's Haven Golf obtained a bond, issued by Travelers, relating to River Hall, for the benefit of Lee County. (collectively, the bonds described in ¶¶ 67 and 68 are the "**Lee County Bonds**").

69.     Hawk's Haven failed to timely construct the required infrastructure improvements at River Hall.

---

[6] See note 2, supra.

70.     Prior to the Bankruptcy Cases, Hawk's Haven and Hawk's Haven Golf paid the bond premiums for the Lee County Bonds.

71.     Lee County, as obligee of the Lee County Bonds, will not release the Lee County Bonds, despite Duke's request, until this work is certified as complete.

72.     On or about February 9, 2010, during the pendency of the Bankruptcy Cases, Hawk's Haven and Hawk's Haven Golf sold the River Hall Development "and all obligations associated therewith" to GreenPointe Communities, for one million three hundred thousand dollars ($1,300,000.00) (the "**River Hall Sale Contract**").  A true and accurate copy of the River Hall Sale Contract is attached hereto as **Exhibit G** and incorporated herein by reference.

73.     The River Hall Sale Contract was executed by current GreenPointe Communities president Grady Miars in his capacity as Vice President of LandMar, and by Edward Burr on behalf of GreenPointe Communities.

74.     The River Hall Sale Contract specifically included the River Hall Development Orders secured by the Lee County Bonds.

75.     In the River Hall Sale Contract, Hawk's Haven and Hawk's Haven Golf disclosed the Lee County Bonds to GreenPointe Communities but denounced any ongoing duty on behalf of Hawk's Haven or Hawk's Haven Golf to renew, maintain, or replace any of the Lee County Bonds.

76.     Pursuant to Lee County development requirements, a developer must provide security prior to commencement of the developer's work; accordingly, the GreenPointe Entity or Entities that assumed responsibility to develop River Hall also assumed the duty to comply with the requirement to provide security.

77.     The Bankruptcy Court subsequently approved the River Hall Sale Contract and, on information and belief, GreenPointe Communities acquired the property either directly or through RH Venture.

78.     Because the Lee County Bonds remain in force and effect and because Duke has continued to pay the bond premiums for the Lee County Bonds in accordance with its obligation, Lee County has permitted the GreenPointe Entities and/or RH Venture to develop River Hall without posting additional security.

79.     To date, the GreenPointe Entities and/or RH Venture have not replaced the Lee County Bonds.

80.     In fact, instead of replacing the Lee County Bonds, the GreenPointe Entities, through Grady Miars, actually demanded that Duke make payment to GreenPointe Communities under the Lee County Bonds because of Hawk's Haven and Hawk's Haven Golf's failure to perform under the River Hall Development Orders.

81.     Duke refused the demand, but has nonetheless continued to be obligated to pay the River Hall Bond premiums to the Sureties, which in turn has benefited the GreenPointe Entities.

### C.     Bridgewater

82.     On information and belief, as a developer of Bridgewater, Bridgewater Developers obligated itself to the City of Lakeland and others to construct or maintain certain infrastructure improvements within Bridgewater.

83.     As developer of Bridgewater, Bridgewater Developers obtained bonds relating to Bridgewater, for the benefit of the City of Lakeland and others (collectively, the "**Bridgewater Bonds**").

84.     On information and belief, GreenPointe Communities either itself or through another GreenPointe-related entity created for that purpose entered into a sales contract relative to the purchase of Bridgewater (the "**Bridgewater Sale Contract**").

85.     On information and belief, the Bridgewater Sale Contract specifically included the obligations secured by the Bridgewater Bonds.

86.     On information and belief, the Bridgewater Sale Contract disclosed the Bridgewater Bonds but denounced any ongoing duty by Bridgewater Developers to renew, maintain, or replace any of them.

87.     Duke is obligated to continue to pay the Bridgewater Bond premiums, which has benefited and continues to benefit GreenPointe Communities, GreenPointe Homes, GreenPointe Holdings, and/or, on information and belief, an entity created for the purpose of developing Bridgewater.

## COUNT I

### Equitable Subrogation Against GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and SH Venture (Southern Hills)

88.     Duke realleges and reincorporates paragraphs 1 through 87 as if fully stated herein.

89.     Although not primarily liable for the debt, Duke performed its contractual obligations to the Sureties through payment of premiums for the City of Brooksville Bonds and the Candlelight Bond.

90.     Although not primarily liable for the debt, Duke performed its contractual obligations to the Sureties by defending the Sureties in the City of Brooksville Action and the Candlelight Action and by paying the Southern Hills Settlement and the Candlelight Settlement.

91.     The payments by Duke were not made as a volunteer but were made to protect Duke's own interest.

92.     In making the bond premium payments and paying the Southern Hills Settlement and the Candlelight Settlement, Duke has paid the entire obligations as those obligations have come due.

93.     Subrogation would not work any injustice to the rights of a third party or any defendant.

WHEREFORE, Duke demands judgment against the GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and SH Venture for damages equal to all amounts this Court finds have been paid or are due and owing by Duke to the Sureties under the City of Brooksville Bonds and Candlelight Bond, or any related indemnity agreements, including the payments of the Southern Hills Settlement and the Candlelight Settlement, including interest, costs, and attorneys' fees incurred in defending any claims on the bonds and prosecuting Duke's claim against the Defendants for equitable subrogation, and for such other and further relief that this Court deems just and proper.

## COUNT II

### Equitable Subrogation Against GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and RH Venture (River Hall)

94.     Duke realleges and reincorporates paragraphs 1 through 87 as if fully stated herein.

95.     Although not primarily liable for the debt, Duke performed and is obligated to continue to perform its contractual obligations to the Sureties through payment of premiums for the Lee County Bonds.

96.     The payments by Duke were and are not made as a volunteer but were made to protect Duke's own interest.

97.     In making the bond premium payments, Duke has paid the entire obligations as those obligations have come due.

98.     Subrogation would not work any injustice to the rights of a third party or any defendant.

WHEREFORE, Duke demands judgment against the GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and RH Venture for damages equal to all amounts this Court finds have been paid or are due and owing by Duke to the Sureties under the Lee County Bonds, or any related indemnity agreements, including interest, costs, and attorneys' fees incurred in defending any claims on the bonds and prosecuting Duke's claim against the Defendants for equitable subrogation, and for such other and further relief that this Court deems just and proper.

## COUNT III

### Equitable Subrogation Against GreenPointe Communities, GreenPointe Holdings, and GreenPointe Homes (Bridgewater)

99.     Duke realleges and reincorporates paragraphs 1 through 87 as if fully stated herein.

100.    Although not primarily liable for the debt, Duke performed and is obligated to continue to perform its contractual obligations to the Sureties through payment of premiums for the Bridgewater Bonds.

101.    Although not primarily liable for the debt, Duke continues to pay premiums for the Bridgewater Bonds.

102.    The payments by Duke were not and are not made as a volunteer but were made to protect Duke's own interest.

103.    In making the bond premium payments, Duke has paid the entire obligations as those obligations have come due.

104.    Subrogation would not work any injustice to the rights of a third party or any defendant.

WHEREFORE, Duke demands judgment against the GreenPointe Communities, GreenPointe Holdings, and GreenPointe Homes for damages equal to all amounts this Court finds have been paid or are due and owing by Duke to the Sureties under the Bridgewater Bonds, or any related indemnity agreements, including interest, costs, and attorneys' fees incurred in defending any claims on the bonds and prosecuting Duke's claim against the Defendants for equitable subrogation, and for such other and further relief that this Court deems just and proper.

## COUNT IV

### Unjust Enrichment Against GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and SH Venture (Southern Hills)

105.    Duke realleges and reincorporates paragraphs 1 through 87 as if fully stated herein.

106.    Duke has conferred a benefit upon GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and SH Venture by payment of the premiums for the City of Brooksville Bonds and the Candlelight Bond.

107.    Duke further conferred a benefit upon these Defendants by supplying the Sureties with a legal defense to the bond claims and by paying the Southern Hills Settlement and the Candlelight Settlement.

108.    The Defendants have appreciated these benefits and have accepted and retained them.

109.    Under the circumstances, it would be inequitable for these Defendants to retain these benefits without paying to Duke the full value of them.

WHEREFORE, Duke demands judgment against GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and SH Venture for unjust enrichment for all amounts this Court finds have been paid or are due and owing by Duke to Chubb or Travelers under the City of Brooksville Bonds and Candlelight Bond, or any related indemnity agreements, including the payments of the Southern Hills Settlement and the Candlelight Settlement, including interest, costs, and attorneys' fees incurred in defending any claims on the bonds and prosecuting Duke's claim against the Defendants for unjust enrichment, and for such other and further relief that this Court deems just and proper.

## COUNT V

### Unjust Enrichment Against GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and RH Venture (River Hall)

110.    Duke realleges and reincorporates paragraphs 1 through 87 as if fully stated herein.

111.    Duke has conferred a benefit upon GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and RH Venture by payment of the premiums for the Lee County Bonds.

112.    The Defendants have appreciated these benefits and have accepted and retained them.

113.    Under the circumstances, it would be inequitable for these Defendants to retain these benefits without paying to Duke the full value of them.

WHEREFORE, Duke demands judgment against GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and RH Venture for unjust enrichment for all amounts this Court finds have been paid or are due and owing by Duke to Chubb or Travelers under the River Hall Bonds, or any related indemnity agreements, including interest, costs, and attorneys' fees incurred in defending any claims on the bonds and prosecuting Duke's claim against the Defendants for unjust enrichment, and for such other and further relief that this Court deems just and proper.

## COUNT VI

**Unjust Enrichment Against GreenPointe Communities,
GreenPointe Holdings, and GreenPointe Homes (Bridgewater)**

114.    Duke realleges and reincorporates paragraphs 1 through 87 as if fully stated herein.

115.    Duke has conferred a benefit upon GreenPointe Communities, GreenPointe Holdings, and GreenPointe Homes by payment of the premiums for the Bridgewater Bonds.

116.    The Defendants have appreciated these benefits and have accepted and retained them.

117.    Under the circumstances, it would be inequitable for these Defendants to retain these benefits without paying to Duke the full value of them.

WHEREFORE, Duke demands judgment against GreenPointe Communities, GreenPointe Holdings, and GreenPointe Homes for unjust enrichment for all amounts this Court finds have been paid or are due and owing by Duke to Chubb or Travelers under the Bridgewater Bonds, or any related indemnity agreements, including interest, costs, and attorneys' fees incurred in defending any claims on the bonds and prosecuting Duke's claim against the

Defendants for unjust enrichment, and for such other and further relief that this Court deems just and proper.

## COUNT VII

### Declaratory Relief Against GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and RH Venture (River Hall)

118.    Duke realleges and reincorporates paragraphs 1 through 87 as if fully stated herein.

119.    In accordance with the Chubb Indemnity Agreement and Travelers Indemnity Agreement, Duke has been obligated to pay and in fact has paid the premium payments for the Lee County Bonds since the initiation of the Bankruptcy Cases.

120.    In light of the River Hall Sale Contract, as between Duke and GreenPointe Communities, GreenPointe Holdings, GreenPointe Homes, and RH Venture, Duke should not have been obligated and should have no future obligation to pay bond premiums related to the Defendants' projects at River Hall.

121.    Duke is in doubt as to the rights and responsibilities of the parties.

122.    There is a bona fide, actual, present and practical need for a declaration of rights between the parties.

123.    The declaration of rights and obligations will deal with a present, ascertained or ascertainable set of facts, or a present controversy as to the stated facts herein.

124.    There is some immunity, power, privilege or right which is dependent upon facts or law applicable to facts.

125.    There is some person or persons who have, or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

126.    The antagonistic and adverse interests are all before the Court.

127.     The relief sought herein is not merely for giving of legal advice by the Court or the answer to questions propounded from curiosity.

128.     Duke seeks a declaration that in light of the River Hall Sale Contract, there is no continuing obligation by Duke to maintain and pay premiums for the Lee County Bonds, and that to the extent that the relevant GreenPointe Entities fail to replace the Lee County Bonds, then Duke is entitled to repayment of future bond premiums paid for the benefit of them.

129.     Duke has retained the law firm of Bush Ross, P.A. to represent it in the bringing of this action and is obligated to pay it a reasonable fee for its services.

WHEREFORE, Duke demands judgment against the Defendants to include:

a)   a declaratory decree finding that there is no continuing obligation by Duke to maintain the Lee County Bonds, and that to the extent that the relevant entities fail or refuse to replace the Lee County Bonds then Duke is entitled to repayment of future bond premiums paid for the benefit of them;

b)   damages, attorneys' fees and costs; and

c)   such other and further relief as this Court deems just and proper.

## <u>COUNT VIII</u>

### Declaratory Relief Against GreenPointe Communities, GreenPointe Holdings, and GreenPointe Homes (Bridgewater)

130.     Duke realleges and reincorporates paragraphs 1 through 87 as if fully stated herein.

131.     In accordance with the Chubb Indemnity Agreement and Travelers Indemnity Agreement, Duke has been obligated to pay and in fact has paid the premium payments for the Bridgewater Bonds since the initiation of the Bankruptcy Cases.

132.    In light of the Bridgewater Sale Contract, as between Duke and GreenPointe Communities, GreenPointe Holdings, and GreenPointe Homes, Duke should not have been obligated and should have no future obligation to pay bond premiums related to Bridgewater.

133.    Duke is in doubt as to the rights and responsibilities of the parties.

134.    There is a bona fide, actual, present and practical need for a declaration of rights between the parties.

135.    The declaration of rights and obligations will deal with a present, ascertained or ascertainable set of facts, or a present controversy as to the stated facts herein.

136.    There is some immunity, power, privilege or right which is dependent upon facts or law applicable to facts.

137.    There is some person or persons who have, or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law.

138.    The antagonistic and adverse interests are all before the Court.

139.    The relief sought herein is not merely for giving of legal advice by the Court or the answer to questions propounded from curiosity.

140.    Duke seeks a declaration that in light of the Bridgewater Sale Contract, there is no continuing obligation by Duke to maintain and pay premiums for the Bridgewater Bonds, and that to the extent that the relevant entities fail to replace the Bridgewater Bonds, then Duke is entitled to repayment of future bond premiums paid for the benefit of them.

141.    Duke has retained the law firm of Bush Ross, P.A. to represent it in the bringing of this action and is obligated to pay it a reasonable fee for its services.

WHEREFORE, Duke demands judgment against the Defendants to include:

a) a declaratory decree finding that there is no continuing obligation by Duke to maintain the Bridgewater Bonds, and that to the extent that the relevant entities fail or refuse to replace the Bridgewater Bonds then Duke is entitled to repayment of future bond premiums paid for the benefit of them;

b) damages, attorneys' fees and costs; and

c) such other and further relief as this Court deems just and proper.

*s/ Anne-Leigh Gaylord Moe*

Jeffrey W. Warren, Esquire
Florida Bar No.: 150024
Email:  jwarren@bushross.com
Anne-Leigh Gaylord Moe, Esquire
Florida Bar No.: 18409
Email:  amoe@bushross.com
Michelle R. Drab, Esquire
Florida Bar No.: 0036993
Email:  mdrab@bushross.com
BUSH ROSS, P.A.
1801 North Highland Avenue
P.O. Box 3913
Tampa, FL  33601-3913
Telephone:  (813) 224-9255
Facsimile:  (813) 223-9620
*Attorneys for Plaintiff*

1727193.10